UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRIAN L. ASKEW,

      Plaintiff,

v.                                                           Civil Action No. 2:25-cv-295

DAVID ROSADO, *et. al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) filed by the City of Chesapeake ("the City"), ECF Nos. 8, 9, and David Rosado, in his official and personal capacity, James O'Sullivan, in his official and personal capacity, and Michael Flint, in his official and personal capacity (collectively, "Defendants"). ECF Nos. 23, 24. Defendants filed an Answer to the Complaint. ECF No. 26. Brian L. Askew ("Plaintiff") filed a response to each motion. ECF Nos. 22, 30. The Court has considered the parties' memoranda, and this matter is ripe for judicial determination. For the reasons stated herein, both of Defendants' Motions to Dismiss are **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Relevant to Defendants' Motions to Dismiss and stated in the light most favorable to Plaintiff, the following alleged facts are drawn from the Complaint.

Plaintiff, Brian L. Askew, is a former inmate at the Chesapeake Correctional Center ("CCC"). Compl. ¶ 3. Defendant James Sullivan ("Defendant Sullivan") was the Sheriff of the City of Chesapeake from October 2012, through November 1, 2024, where he managed all staff employed at CCC. *Id.* ¶ 5. Defendant David Rosado ("Defendant Rosado") was the Sheriff of the

1

City of Chesapeake from November 1, 2024, through February 18, 2025, where he managed all staff employed at CCC. *Id.* ¶ 6. Defendant Michael Flint ("Defendant Flint") was a Deputy Captain and Chief of Security at CCC throughout Plaintiff's term of incarceration. *Id.* ¶ 7.

Plaintiff was incarcerated at CCC, from September 2022 through February 18, 2025. *Id.* ¶ 3. Plaintiff began his term of incarceration in general population, but he was shortly removed and placed in solitary confinement. *Id.* ¶ 11. Plaintiff alleges that he was placed in solitary confinement on the pretext of being on suicide watch, but in fact he was placed in solitary confinement because he was charged with assaulting the daughter of an acquaintance of Defendant Flint. *Id.*

Plaintiff alleges that the conditions of his solitary confinement caused him both physical and psychological harm. *Id.* ¶ 14. From 2023 through 2024, Plaintiff was compelled to sleep without a mattress on his cell floor, which caused him to experience chronic back pain, spinal lordosis, bug bites, and neuropathy in his left arm. *Id.* Plaintiff asserts that he was placed in tight handcuffs which caused him to sustain tendinitis and neuropathy in his wrists and hands. *Id.* Plaintiff was kneed in the side by a guard causing a fractured rib, and on another occasion, punched in the face by a guard. *Id.* He also alleges that his confinement in an isolation cell with no windows to the outside world caused him to develop visual myopia or near sightedness, a potentially permanent visual impairment, anxiety induced chest pains, and shortness of breath. *Id.*

On February 9, 2024, CCC medical staff notified CCC security staff that holding Plaintiff in extended solitary confinement was likely to make Plaintiff suicidal. *Id.* ¶ 35. Plaintiff remained in solitary confinement and subsequently began experiencing auditory and visual hallucinations, fantasizing about death, and experiencing a sense of hopelessness. *Id.* ¶ 36, 40.

Plaintiff further alleges that from March 2023 through February 2025, he was frequently strip searched and subjected to cavity searches, solely for the purpose of humiliation and

degradation. *Id.* ¶ 12. Plaintiff states that no contraband was found as a result of these searches, and there was no probable cause to suspect there would be. *Id.*

Plaintiff alleges that Defendants held him in solitary confinement despite repeated communications from the CCC medical department stating that there was no medical condition that required Plaintiff to be held in solitary confinement, and that solitary confinement was injurious to his mental health. *Id.* ¶ 17. On July 23, 2023, CCC medical staff informed Defendants that Plaintiff did not need to be housed in medical housing for any medical reason. *Id.* ¶ 18. On November 3, 2023, CCC medical staff recommended that Plaintiff be housed in general population. *Id.* ¶ 19. On February 5, 2024, CCC Master of Social Work, Amy Luckenbill-Wheeler, noted in Plaintiff's medical chart that it would be appropriate to place him in general population. *Id.* ¶ 21. On February 9, 2024, CCC medical personnel noted in Plaintiff's medical chart that there was no medical justification for retaining him in the medical department's isolation cell and recommended that he be moved to general population. *Id.* ¶ 22. On February 13, 2024, CCC medical staff informed jail staff that there was no medical justification for maintaining Plaintiff on suicide watch, and a jail deputy stated that he did not know why Plaintiff remained on suicide watch. *Id.* ¶ 23. On September 13, 2024, Plaintiff was cleared by medical staff to return to general population, but he remained in solitary confinement. *Id.* ¶ 25. On October 7, 2024, CCC medical personnel recommended that Plaintiff be moved to general population, but he remained in solitary confinement.

Plaintiff also alleges that he was denied a jail bed or bunk while in solitary confinement. *Id.* ¶ 27. On October 17, 2023, Plaintiff alleges that he was compelled to sleep on a thin sleeping mat placed on the floor of his cell, which resulted in an insect infestation between the floor and

3

the mat. *Id.* ¶ 28. On October 30, 2023, Defendant Flint denied Plaintiff's request to have his mat removed from the floor during nonsleeping hours to prevent insect infestation. *Id.* ¶ 29.

Plaintiff alleges that he was denied regular opportunities to exercise outside of his cell in violation of state law. *Id.* ¶ 15. On November 3, 2023, CCC medical staff notified CCC security staff that Plaintiff was entitled to receive at least an hour of recreation outside of his cell per day, but recreational time was not provided. *Id.* ¶ 31. On December 5, 2023, CCC medical personnel notified security jail officials that Plaintiff had been held in the medical isolation cell since he was admitted to the facility and it was medically necessary for him to receive time out of his cell every day and daily recreation time. *Id.* ¶ 32. On December 9, 2023, CCC medical staff notified CCC security staff that Plaintiff had only been outside his cell for showers and that he needed to spend some time out of his cell. *Id.* ¶ 33. On July 10, 2024, CCC medical staff noted that Plaintiff had been subjected to extended confinement without recreation time. *Id.* ¶ 34. On August 8, 2024, a jail deputy confirmed that Plaintiff was being denied all out of cell and recreation time. *Id.* ¶ 38.

Plaintiff asserts that during his incarceration at CCC, he was not given an opportunity to challenge the conditions of his confinement. *Id.* ¶ 16. Plaintiff alleges that Defendant Flint prevented him from filing grievances by instructing a subordinate employee to deny his request for grievance forms. *Id.* ¶ 43. Additionally, Plaintiff alleges that he was denied access to "reading material, including law material," and he was denied the opportunity to communicate with his family. *Id.* ¶ 15.

Plaintiff accuses Defendants of violating his liberty interests in avoiding solitary confinement, securing his release from solitary confinement, and avoiding the abusive conditions of confinement alleged in the Complaint. *Id.* ¶ 15. Specifically, Plaintiff asserts two counts against Defendants:

4

Count I.   Violation of the Due Process Clause of the Fifth and Fourteenth Amendment to the U.S. Constitution (Procedural Due Process: 42 U.S.C. § 1983) (*Id.* ¶¶ 46-53);

Count II.  Violation of the Virginia Constitution, Article I, §§ 9, 11, and 16 (*Id.* ¶¶ 54-55).

On May 23, 2025, Plaintiff filed a Complaint. ECF No. 1. On June 23, 2025, the City filed its Motion to Dismiss for Failure to State a Claim as to all counts. City's Mot. to Dismiss, ECF Nos. 8, 9 ("City's Mot."). On July 14, 2025, Plaintiff filed a Memorandum in Opposition to the City's Motion to Dismiss. ECF No. 22. On July 16, 2025, Defendants Rosado, O'Sullivan, and Flint filed an Answer and a Partial Motion to Dismiss Count I against the Individual Defendants in their official capacity and Count II of Plaintiff's Complaint. ECF No. 26; Mot. to Dismiss, ECF Nos. 23, 24. On July 21, 2025, the City filed its Reply. ECF No. 27. On August 5, 2025, Plaintiff filed a Response to Defendants Rosado, O'Sullivan, and Flint's Partial Motion to Dismiss. ECF No. 30.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### III. DISCUSSION

Under Rule 12(b)(6), Defendants Rosado, Flint, and O'Sullivan move for partial dismissal of Count I with respect to Plaintiff's claims for money damages against the Defendants in their official capacity and Count II for failure to state a claim upon which relief can be granted. ECF Nos. 23, 24. Defendant City of Chesapeake moves to dismiss Counts I and II under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. ECF Nos. 8, 9.

**A. Count I: Violation of the Due Process Clause of the Fifth and Fourteenth Amendment, 42 U.S.C. § 1983**

*1. Defendants Rosado, Flint, and O'Sullivan*

The Individual Defendants argue that the Court should dismiss Plaintiff's claim for money damages under Section 1983 because the Eleventh Amendment bars suits for money damages

6

against state officers in their official capacity. "The Eleventh Amendment limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." *Kitchen v. Upshaw*, 286 F.3d 179, 183-184 (4th Cir. 2002).

Federal district courts have long held that "Virginia Sheriffs, and their deputies, are 'state officers' for the purpose of the Eleventh Amendment." *Vollette v. Watson*, 937 F. Supp. 2d 706, 714 (E.D. Va. 2013); *see also Smith v. McCarthy*, 349 Fed. Appx. 851, 858 n. 11 (4th Cir. 2009) ("[T]he district court did not err in dismissing the [plaintiffs'] claims against [the deputy sheriffs] in their official capacities, as they are afforded immunity by the Eleventh Amendment."); *Blankenship v. Warren Cnty.*, 931 F.Supp. 447, 449 (W.D. Va. 1996) (finding that "the Sheriff and the Sheriff's Department [in Virginia] are arms of the state and cannot be held liable for monetary damages under § 1983 because they are entitled to Eleventh Amendment immunity").

Here, each of the Individual Defendants served as either Sheriff of the City of Chesapeake or as a Sheriff's Deputy during the events giving rise to the Complaint. *See* Compl. ¶¶ 5-7. Additionally, Plaintiff acknowledges this fact in his Complaint and concedes that his suit for monetary damages against the Individual Defendants in their official capacity is barred by the Eleventh Amendment. Pl's. Resp. ECF No. 30. Therefore, the Court finds that the Individual Defendants are state officers for purposes of Eleventh Amendment immunity and are immune from suit with respect to Plaintiff's official capacity claims seeking monetary damages.

The Court's immunity ruling is limited to Plaintiff's official capacity claims seeking monetary damages. Accordingly, to the extent Plaintiff's Complaint advances a personal capacity claim seeking monetary damages against the Individual Defendants, this Court's Eleventh Amendment immunity ruling does not extend to such claim.

### 2. *Defendant City of Chesapeake*

Plaintiff alleges that the City violated his constitutional rights as protected by 42 U.S.C. § 1983 ("Section 1983") and the Fifth and Fourteenth Amendments of the United States Constitution. Compl. ¶ 47. Specifically, Plaintiff argues that the City violated his Procedural Due Process rights when CCC jail officials relegated him to solitary confinement for two years without providing him with "notice, a hearing, an opportunity to present evidence, or any legitimate penological justification." *Id.* Additionally, Plaintiff argues that the Defendants acted under the color of state law in depriving him of his Procedural Due Process rights. *Id.* ¶ 14. Plaintiff also alleges that the Defendants knew or should have known of Plaintiff's solitary confinement and the conditions of his confinement. *Id.* ¶ 44. Plaintiff fails to allege sufficient facts to support his Section 1983 claim, as explained below, the Court will grant Defendant City of Chesapeake's Motion to Dismiss as to Count I.

Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "For purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Local government entities may be held liable under Section 1983 for the unconstitutional actions of their employees when the alleged harm is directly attributable to the entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality may only be held liable when they have harmed the plaintiff "through an official policy or custom." *Carter v. Morris*, 164 F.3d 215,

218 (4th Cir. 1999) (citing *Monell*, 436 U.S. at 690-691)). A plaintiff may allege an unconstitutional policy or custom by looking to: "(1) express ordinances and regulations; (2) affirmative decisions of final policy makers; (3) omissions by final policy makers that 'manifest deliberate indifference to the rights of citizens,' or (4) practices that are so 'persistent and widespread' and so 'permanent and well settled as to constitute a custom or usage with the force of law.'" *Sosa v. Hill*, 2025 U.S. Dist. LEXIS 51115 (E.D. Va. Mar. 19, 2025) (citing *Carter*, 164 F.3d 215, 218) (internal quotations omitted). However, under the fourth method, an unconstitutional policy or custom "will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

Here, Plaintiff seeks to hold the City liable for the actions of the Individual Defendants in their respective positions within the Chesapeake County Sheriff's Department. Plaintiff alleges that "THE CITY OF CHESAPEAKE operated CCC throughout PLAINTIFF's incarceration there and maintained an official policy, practice and custom of confining PLAINTIFF in solitary confinement under the conditions alleged *infra* throughout PLAINTIFF's confinement there." Compl. ¶ 8. However, it is the Sheriff, not the City, who is solely responsible for the operation of the CCC. *See* Va. Code § 53.1-116.2 ("The sheriff of each county or city shall be the keeper of the jail thereof[.]"); *see also Brown v. Mitchell*, 308 F.Supp. 2d 682, 691 (E.D. Va. 2004) ("By statute,…the sheriff is the keeper of the local jail, and the legal custodian of those who are lawfully confined in it.").

As recognized by the United States Court of Appeals for the Fourth Circuit and several courts within this district, a Sheriff is a constitutional officer who serves independently of county and city governments. *See Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993); *see also Scott v. City of Virginia Beach*, No. 2:10cv625, 2011 WL 11004246 at *4 (E.D. Va. Sep. 29,

2011); *Himple v. Moore*, 673 F.Supp. 758, 759 (E.D. Va. 1987); *Sherman v. City of Richmond*, 543 F.Supp. 447, 449 (E.D. Va. 1982). Therefore, "[t]he City…is not liable under section 1983 for the actions of its Sheriff in the administration of its jail, because under the law of Virginia those actions do not embody an official policy of the City…." *Strickler*, 989 F.2d 1375, 1390.[1] Accordingly, Defendant City of Chesapeake's Motion to Dismiss is **GRANTED**.

### B. Count II: Violation of the Virginia Constitution, Article I, §§ 9, 11, and 16

Plaintiff's claims in Count II allege that the Defendants violated his rights under the Virginia Constitution. Specifically, Plaintiff argues that his conditions of confinement were imposed in retaliation for the nature of the underlying offense, in violation of his due process rights under Article I § 11 of the Virginia Constitution. He argues that he was subjected to inhumane treatment or punishment disproportionate to his conduct, in violation of Article I § 9 of the Virginia Constitution. Lastly, he alleges that the Defendants violated his right to practice religion while incarcerated, pursuant to Article I, § 16 of the Virginia Constitution.

Plaintiff's claims under Article I, §§ 9 and 11, fail to state a claim under the allegations of the Complaint because these provisions do not create a private right of action. To enforce a private right of action under the Virginia Constitution, the provision must be self-executing. *See Robb v. Shockoe Slip Found.*, 228 Va. 678, 324 (1985). "A constitutional provision may be said to be self-

---

[1] The Court is aware that in a similar case, *May v. Newhart*, 822 F.Supp. 1233 (E.D. Va. 1993), the judge allowed the plaintiff to retain the City of Chesapeake as a defendant based on *Dotson v. Chester*, 937 F.2d 920 (4th Cir. 1991), a case that construed Maryland rather than Virginia law. However, several courts in this district have subsequently rejected the reasoning of May. *See Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993) ("The City of Portsmouth is not liable under section 1983 for the actions of its Sheriff in the administration of its jail, because under the law of Virginia those actions do not embody an official policy of the City of Portsmouth."); *Scott v. City of Virginia Beach*, No. 2:10cv625, 2011 U.S. Dist. LEXIS 157773, at *n. 1 (E.D. Va. Sep. 29, 2011) (noting that Strickler rather than May controls in a case involving Virginia law); *Keathley v. Vitale*, 866 F.Supp. 272, 275 n.4 (E.D. Va. 1994) (noting that reliance on May is troublesome because it may directly conflict with the subsequent Fourth Circuit decision in Strickler); *Stewart v. City of Suffolk, Virginia*, No. 2:93cv234 (E.D. Va. 1993) ("The Court need not attempt to reconcile or distinguish the decision reached by the district judge in May since the Fourth Circuit has resolved this issue under Virginia law."). The Court agrees that Strickler rather than May, controls in this case.

executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." *Id.* at 682 (quoting *Newport News v. Woodward*, 104 Va. 58, 61-62 (1905)).

Here, Article I, § 9 of the Virginia Constitution is not self-executing because it "states only the principle that cruel and unusual punishment ought not to be inflicted, without any attendant rules." *Quigley v. McCabe*, No. 2:17cv70, 2017 WL 3821806, at *5 (E.D. Va. Aug. 30, 2017). Therefore, Plaintiff fails to state a claim under Article I, § 9 of the Virginia Constitution.

Article I, § 11 of the Virginia Constitution has been found to be self-executing, but "only in the context of claims of damages to or takings of property." *Id.* at *15; *see Doe v. Rector & Visitors of George Mason Univ.* 132 F. Supp. 712, 728 (E.D. Va. 2015) ("[A]lthough the due process provision of the Virginia Constitution is self-executing, this has only been held to be true with regard to property deprivation[.]"). Here, Plaintiff's claim under Article I, § 11, alleges that Defendants violated this provision by failing to "[provide] for due process before being deprived of life or liberty and for denial of fairness in disciplinary actions and classification decisions." Compl. ¶ 55. Therefore, Plaintiff fails to state a claim upon which relief can be granted under Article I, § 11, because this provision is not self-executing with respect to claims for the deprivation of life or liberty.

### C. Count II: Violation of the Virginia Constitution, Article I, § 16

The Court declines to exercise supplemental jurisdiction over Count II of Plaintiff's claim under Article I, § 16. This section prohibits the establishment of religion and ensures the free exercise of religion in Virginia. However, the Supreme Court of Virginia has never addressed whether Article I, § 16 is self-executing, and Plaintiff has conceded that his claim under this

11

provision is not actionable. *See Richardson v. Clarke*, No. 3:18cv23, 2020 WL 4758361 (E.D. Va. Aug. 17, 2020) (dismissing a similar claim pursuant to 28 U.S.C. § 1367). Therefore, the Court declines to exercise supplemental jurisdiction over this claim because "questions of state constitutional law are best answered by the state courts." *Id.*

## CONCLUSION

For the foregoing reasons, Defendant City of Chesapeake's Motion to Dismiss is **GRANTED**, ECF No. 8, and the Individual Defendants' Partial Motion to Dismiss, ECF No. 23, is **GRANTED**.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the Parties.

**IT IS SO ORDERED**

Norfolk, Virginia
November 24, 2025

/s/
Raymond A. Jackson
United States District Judge